## MARYLAND CASUALTY CO. v. REID.
### No. 7372.

Circuit Court of Appeals, Fifth Circuit.
March 1, 1935.

Chas. B. Walker, Chas. D. Smith, and A. H. Boyd, all of Beaumont, Tex., for appellant.

M. G. Adams, of Beaumont, Tex., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

This suit under the Texas Workmen's Compensation Act (Vernon's Ann. Civ. St. Tex. art. 8306 et seq.) has been three times tried to a jury on substantially the same evidence. The first jury returned a verdict for plaintiff. The District Judge set the verdict aside. The second jury, directed by the judge on the ground of insufficient evidence, to do so, returned a verdict for the defendant. We found the evidence sufficient, reversed the judgment, and remanded the cause for another trial. Reid v. Maryland Casualty Co. (C. C. A.) 63 F.(2d) 10. The third jury found for plaintiff. This appeal is from the judgment on that verdict. Only two errors are assigned, one complains of remarks made by appellee's counsel in his closing argument to the jury; the other, that the verdict on the issue of plaintiff's dependency is not supported by the evidence. No error is assigned in connection with the charge, either to the giving or the refusal of instructions. No request was made for a directed verdict. In these circumstances, whether the evidence is sufficient to support the verdict is not properly before us. We therefore overrule this assignment without inquiring into the question it seeks to raise, and pass to the consideration of the remaining error assigned, that on the argument.

The bill of exceptions, No. 2, relied on as supporting this assignment contains only this:

"After both sides had concluded the testimony and rested, and the cause was being argued to the jury, Mr. C. W. Howth, counsel for plaintiff, in his closing argument to the jury, stated to the jury:

" 'The evidence in this case shows that this army doctor, Dr. Cox, was paid by the defendant for his testimony and the evidence shows that some of the other witnesses were paid by the defendant for their testimony. Dr. Cox laid down the rule that an injury or blow did not affect an arrested case of syphilis and would not cause the dormant case of syphilis to flare up and become active, and stated that many medical authorities on syphilis, including one written by Dr. Stokes, laid down this rule. We brought Dr. Ferguson here with that very book by Dr. Stokes and it says the very opposite to what that army doctor said is true. Now, if this defendant's money can bring this high-class army doctor here to give that kind of testimony, what would it do with a Greek restaurant keeper?' Whereupon counsel for defendant immediately arose and objected and excepted to such argument, and requested the court to instruct the jury to disregard such argument.

"Whereupon the court responded 'I presume that it is an argument of fact but not a valid one.'

"To which argument and action of the court in refusing to instruct the jury not to consider the same, defendant in open court excepted."

We are referred to no other place in the record at all bearing on this matter. We find but one.[1] No motion was made

[1] In bill of exceptions No. 1, Tr. p. 271, without precedent or following explanation, this appears:

"During the course of Mr. Howth's argument to the jury Mr. Boyd rose to object.

"The Court: What was that?

"Mr. Howth: Their army doctor said

to declare a mistrial. No request was made for any other action. For all that appears, defendant chose rather to speculate on the verdict in reliance on its exception, than to seek relief through a mistrial, or more binding instructions. Nor, of all the argument that there must have been, does, the record make mention of any, except this single excerpt. We are thus asked to nullify all of the proceedings of this thrice tried case, and put the judge in error, upon the bald proposition that the action of the court in connection with these excerpted remarks, constitutes such serious and substantial abuse of his function and discretion as administrator, as to completely invalidate an otherwise errorless trial. We think the claim that this may be done proceeds from a misconception of the nature of a common-law trial, and of the function and duties of the trial court and of this court. Such a trial is no cool process of mere science. It is not, it cannot be, rigidly formal, coldly logical. In a trial proof is but the means to an end. That end, not the stirring of a mild and passive sympathy in the minds of the triers with the litigant's point of view, but the inducing there of the impulse to believe, the will to say "for the plaintiff," or "for the defendant." All preparation for judicial proof looks toward, and all such proof is finally presented in a trial, an action in form, dramatic in every case, in fact, overwhelmingly so in many of them. The very nature of a jury trial makes this so. Here men deal in dramatic fashion with the human equation in the most illusive forms. Here men strive for the mastery, not over each other, but over the minds of the triers, to induce there the will to believe, and to declare. Minds which are induced to and do reach their conclusions in the atmosphere of drama, and often under the pressure of emotional stress, by the loose and ordinary methods of persuasion and influence common to the street. It is this, that the conclusions of the triers do not come as the result of cold and careful reasoning upon data coolly, carefully, and in a wholly nonpartisan way supplied, which gives its intensely dramatic character to a trial. It affects the witnesses, the lawyers, the litigants, the triers themselves. It is entirely true that many verdicts in criminal and in civil cases find their real spring in an atmosphere generated by the trial, where things felt but unseen, sometimes real, sometimes illusory, arising out of but more than the relevant testimony, in the end induce the verdict more than the testimony itself does. Especially in criminal cases, to which public interest attaches, is this dramatic atmosphere present and operating, and it is rare that the verdict in such a trial is wholly free from the influences, the feelings, the antagonisms which the actions of the litigants and the course of the trial have aroused and injected into it. It is of the essential nature of a jury trial, then, that though its purpose is the same as that of a scientific investigation, to fully present the gathered facts which will furnish the grounds for correct induction, these gathered facts are presented for decision in a dramatic setting, are introduced in a dramatic way, and the trial itself must come to a dramatic end in a solemn and fateful pronouncement. For a common-law jury trial is at last a trial, with its attack and its defense, its action and its suspense, and not a scientific inquiry, which in a leisurely and impersonal way may continue indefinitely until the quest is at an end. Because these things are so of jury trials, it is of the genius of our institutions that they be conducted under the firm and steady guidance of judges as administrators, who having minds trained and personalities adequate to the task, are held primarily responsible for their just outcome.[2] Because these things are so, in a federal court at least, the conduct

---

Dr. Stokes laid down the rule that injury or blow did not affect an arrested case of syphilis. We brought Dr. Ferguson here with that very book and it says the very opposite to what the army doctor said is true. We proved that what he says is untrue by three doctors in Beaumont. Now I make this proposition to the jury, that if this defendant's money can produce that result from a highup army doctor, what could it do with a Greek restaurant keeper?

"Mr. Boyd: You used the word corrupted.

"Mr. Howth: I will withdraw it.

"The Court: I presume that is argument of fact, but not a valid one."

[2] "The judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility." Patton v. Texas & P. R. Co., 179 U. S. 661, 21 S. Ct. 275, 276, 45 L. Ed. 361.

of jury trials is largely confided to the District Judge, who is expected to have and exercise trial skill of the highest order, and a wise and just discretion. His chief function, his primary object, is to keep the case within legal bounds by admonitions and rulings from its beginning to its end. He uses the rules of evidence as means, not ends, to elicit and confine the case to the best evidence available in order to bring the truth to light. Trained in the principles and problems of proof, knowing how to value the pertinent, to reject the impertinent, he uses other trial rules to accomplish the same end. Nor does his function as overseer, superintendent, and administrator of the trial end with its ending.

At common law and by statute, the federal District Judge is charged with the duty of granting a new trial in a jury case where, in his opinion, it went unjustly and injuriously out of bounds.[3] This court, as to law cases, is a court of error. We do not retry the case. We review the record made in it for reversible error, error by the judge, in conducting or failing to conduct the trial, which has, by permitting the case to get out of bounds, prejudiced the just result. In this review we are guided by the statute just quoted, note 3, supra. We do not reverse cases for insubstantial error. Abstract inerrancy is hardly possible in the trial of a case in the federal court; it is never an essential to a valid trial there. Jennings v. United States (C. C. A.) 73 F.(2d) 470; Community Natural Gas Co. v. Henley (C. C. A.) 54 F.(2d) 59. Too much is said and done about too little in the heat and hurry of a trial, for it all to be important. Things of no moment in their transpiring are not made momentous merely by making record of them. Therefore, though the District Judge is an administrator primarily charged with the just conduct of the trial, he may not ordinarily be put in error merely because an aberration from trial rules has occurred. It is the duty of counsel by objection to call such threatened or actual departure to the judge's attention, and invoke his corrective action, and, if overruled, to make it appear that prejudice has resulted.

Ordinarily, if his counsel fails to adequately object, or fails to except to adverse action on his objection, a litigant may not complain of what occurred as error, for he will be treated as having assented to it. On the other hand, a trial judge may never abdicate his function, or surrender to counsel the conduct of the trial. It is still his primary duty to oversee and conduct it. Because this is so, he may, and if he fails to, the appellate court may, though no objection is made and no exception taken, correct an error of abdication which has resulted unjustly, by voiding the trial. But this will be done only in extreme cases, where the judge's error in permitting the trial to get out of bounds, instead of exercising his function to guide and control it, is of such transcendent influence on the course of the trial as that, though not excepted to, justice requires its being noticed and corrected. One, therefore, who brings an appeal here in a case at law must show either an unexcepted to error of abdication so glaring that its effect upon the conduct of a trial may not be doubted, or that he had recourse to and exhausted all the means and aids to obtain relief available below. By way of illustration, ordinarily, one may not, speculating on a verdict, decline to move for an instruction and then come here urging the want of evidence to sustain it. Ordinarily, though, there are exceptions, Ætna Life Ins. Co. v. Kelley (C. C. A.) 70 F.(2d) 589, 93 A. L. R. 471; Rouse v. Burnham (C. C. A.) 51 F.(2d) 709; New York Central R. Co. v. Johnson, 279 U. S. 310, 49 S. Ct. 300, 73 L. Ed. 706, one may not complain here of an argument as out of bounds unless at least it was objected to and there was an exception, Fidelity & Cas. Co. v. Niemann (C. C. A.) 47 F.(2d) 1056; Alabama G. S. R. Co. v. Carroll (C. C. A.) 84 F. 772, 778, 784; ordinarily, too, even this will not suffice where nothing appears except the mere notation and recording of objection and exception, no motion for a mistrial made, no further effort to secure a more binding instruction, Southern Pacific Co. v. Marquez (C. C. A.) 44 F.(2d) 286; Brooklyn Heights R. Co. v. Ploxin (C. C. A.) 294 F. 68. Much

---

[3] Section 391, title 28 USCA, provides: "All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

must be left to the discretion of the court in the conduct of the trial, and unless it is made clearly to appear that this discretion has been abused, a reversal for inflammatory argument alone will not be ordered, Union Electric Light & Power Co. v. Snyder Estate Co. (C. C. A.) 65 F.(2d) 297, 302; Alabama G. S. R.: Co. v. Carroll well states the general rule. "We understand the general rule to be that the remarks of counsel to the jury on the merits, to constitute reversible error, must be objected to at the time, be unwarranted by the pleadings and evidence, have a tendency to mislead or prejudice the jury, and be to more or less extent approved by the trial judge." We applied this rule in Woolworth Co. v. Wilson, 74 F.(2d) 439, 443. We found reversible error in a persistent course of argument because "it went wholly unrebuked by the judge."

In saying there, "sympathy for suffering and indignation at wrong are worthy sentiments, but they are not safe visitors in the courtroom, for they may blind the eyes of Justice. They may not enter the jury box, nor be heard on the witness stand, nor speak too loudly through the voice of counsel. In judicial inquiry the cold clear truth is to be sought and dispassionately analyzed under the colorless lenses of the law," we did not mean to say that legitimate advocacy transgresses trial rules; that counsel may not be advocates in a jury trial. Nor did we mean to say that advocacy may not be legitimately used to arouse sympathy for suffering, and indignation for wrong. Sometimes these are of the very essence of the trial. We meant to say, we said, that they could not be illegitimately or falsely used. We merely said that since the verdict must be, as far as the trial judge may bring it about, dispassionately arrived at, his failure to rebuke the reiterated appeals to prejudice and illegitimate sympathy, his failure to advise the jury that a red herring was being deliberately drawn across the trail, was, under the circumstances of that case, error.

In Fidelity Phenix Fire Ins. Co. v. Vallone, 74 F.(2d) 137, 138, we said: "The latitude allowable in argument to the jury is largely in the discretion of the trial court, and a judgment is not subject to reversal because of the overruling of an objection to a statement made in argument unless it clearly appears that the court's discretion was abused." We think it clear that the record does not show abuse of discretion,

error affecting unjustly the conduct of the trial. The witness Cox had testified that he had attended the trial at the expense of the defendant, and that it was also paying him for his services, and his testimony about the book had been controverted. Other witnesses for defendant had testified to receiving pay for coming to the trial. Another witness for defendant had testified that he was an investigator, and was being paid for the time he put in, $3 a day. The appellant had directly charged and sought by some of these witnesses to prove that appellee's witnesses were purchasable and had been purchased. Even as we get it, lifted out of its context so that it derives its whole color from itself, not from what went before, we cannot say that in itself, what was objected to, prejudicially overstepped the bounds of legitimate argument. But it is plain, from the judge's comment on it, and from what appears elsewhere in bill of exceptions No. 1, that there was more to the argument than we have. The judge realized, awkward as the effort was, that plaintiff's counsel was attempting not to state as a fact, that defendant's witnesses had testified corruptly, but to argue that because these witnesses had received money from defendant, some for their services, some for their attendance, and some for both, it might well be inferred that they would be inclined to color their testimony in its favor. Either in this, or in a different connection, the record leaves this unclear—note 1, supra—plaintiff had definitely declared that he was not intending to charge corruption, and defendant had, without excepting to the remarks, accepted the explanation. Under all the circumstances, if appellant had thought that the District Judge's comment that this was a mere argument, but not a valid one, did not sufficiently advise the jury that what plaintiff's counsel said was mere argument, that it was not intended to and did not charge fraud and corruption, and that as an argument it was without force, he should have asked further instructions at the time, or later in the charge. And if he felt that the argument had too greatly prejudiced the trial for an instruction to cure it, he should have asked for a mistrial. It is quite clear that he did not think the argument warranted declaring a mistrial, nor do we. It is quite plain that if there was misconduct in the argument, it was not such misconduct as made the court's action in not more clearly limiting its effect, ground for reversal. It is most clear that the rec-

ord here shows no abdication of function by the District Judge, no failure to discharge it. The case has been tried three times. This time the sole error claimed arises on these remarks of counsel. If we thought that what is made meagerly to appear regarding them showed error, the case still should not be reversed, for it would not be a substantial error. But we think no error has been shown. For all that otherwise appears from the record, the cool, calm statement of the District Judge, that the argument was not a valid one, was entirely effective to dispose of and do away with any prejudice which appellant might otherwise have taken from it.

We find the record without error. The judgment is affirmed.