### SPIVEY v. UNITED STATES.
### No. 9038.

Circuit Court of Appeals, Fifth Circuit.

Jan. 15, 1940.

Rehearing Denied March 13, 1940.

Roderick Beddow and G. Ernest Jones, both of Birmingham, Ala., for appellant.

Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, with two others, was charged upon an indictment in twenty-seven counts, with violating Sections 80,[1] 83[2] and 338, Title 18 U.S.C.A. Seven counts, 1, 2, 3, 23, 24, 25 and 26, charged violation of Section 338, the use of the mails to defraud. Eighteen, being all of the remaining counts, except the twentieth, charged the making of false and fictitious statements in violation of Section 80. One, the twentieth, charged a violation of Section 83, a conspiracy to defraud the Government by obtaining payment or allowance of false or fraudulent claims. Briefly stated, this was the scheme the mail fraud counts charged. Defendants, owners of a cotton gin and warehouse, in pursuance of a scheme, by false pretenses and practices to obtain moneys from and through the Commodity Credit Corporation, in which the United States of America was a stockholder and which was an agency of the United States, would induce farmers bringing their cotton to be ginned, to sign in blank, notes and loan agreements, commonly known as Commodity Credit Corporation cotton producer's notes. The notes and agreements so signed would be padded, that is, filled out for sums in excess of the amounts actually obtained by the farmers thereon, and with bales of cotton, which the signers thereof had not raised or claimed; in some instances the names of makers of the notes would be forged. Thereupon defendant would take the notes to divers and sundry banks and secure credit thereon, and the banks, believing the notes were genuine, would assign them to the Commodity Credit Corporation.

The charge in the eighteen counts under Section 80, was that the notes and cotton agreements aforesaid, would be fraudulently and fictitiously prepared and altered, so as to show thereon, sums of money and bales of cotton in excess of the amounts obtained and bales owned by the purported signers of the notes. Count twenty, charged that the things done by the defendants were and amounted to, an agreement or conspiracy to defraud the Government by obtaining or aiding to obtain, the payment or allowance of false or fraudulent claims. Convicted on them all, he was sentenced to thirty years in the penitentiary as follows; five years on each of mail fraud counts 1, 2, 25 and 26, the sentences to be not concurrent but cumulative; ten years on counts 16 and 20 to commence at the expiration of the twenty years imposed on counts 1, 2, 25 and 26; and ten years on the remaining counts, to run concurrently with the sentences imposed on the other counts. Feeling himself aggrieved, both by the conviction and by the calculated rigor and severity of the sentence, he appeals, assigning numerous errors.

Appellee moves to strike the assignments of error as filed too late, and attacks the assignments themselves as too general and lacking in definiteness of specification, and the brief as in complete violation of the rules. We agree with appel-

---

[1] "Or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

[2] "Whoever shall enter into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

lee that the assignments should have been earlier filed and that many of them are too general and wanting in definiteness of specification. We agree too, that the multitude of assignments, particularly those relating to rulings on evidence, have been illy and meagerly briefed, almost wholly without adequate statement in the brief and adequate reference to the record, and in violation of every rule and practice of proper briefing. But, notwithstanding that this is so, and that this almost complete disregard of the rules in briefing a typewritten record of over 1200 pages, has entailed upon us almost insuperable difficulties and labors, we have, because of the unusual, and we think, excessive rigor and severity of the sentence imposed, overruled the motion to strike, and endeavored as to the mass of assignments so meagerly referred to in the brief, to piece out its presentation, and by a close examination of the record, to determine for ourselves, whether any of defendant's substantial rights have been denied him.

Almost legion in number, and purporting each to raise a separate and distinct point, the claimed errors may be appropriately gathered for treatment into four groups. Group one, relates to the insufficiency of the indictment and the proof; group 2 to rulings on evidence; group 3 to the argument; while group 4 relates to miscellaneous attacks upon the conduct of the trial, (a) that defendant was denied timely inspection of the jury lists, (b) that he was subjected both before and in the course of the trial, to a violation of his constitutional immunity against self-incrimination, and (c) that there was an abuse of discretion in overruling his motion for a new trial.

Under the first group, appellant makes three major points; as to the conviction on the mail fraud counts, that the indictment as to these counts does not sufficiently allege and the proof does not at all show, that the mail matter dealt with in them was placed or caused to be placed, in the mails by appellant; as to the conviction on the Sections, 80 and 83 counts, (a) that the United States was not a stockholder in the Commodity Credit Corporation, (b) that the section has to do with claims against the Government and not with mere negotiations with a Government agency, and (c) that the instrument set out in Count five and other counts named, is not "a bill" as charged therein.

We cannot agree with appellant on any of these points. As to the mail fraud counts, the evidence overwhelmingly establishes; that from the beginning, it was intended that the financing operations undertaken through the use of the Cotton Commodity Credit notes and agreements, would be accomplished through loans from the Commodity Credit Corporation; and that it was within the contemplation of the parties, that the mails would be used to effect such financing. The evidence overwhelmingly establishes too, that there was a fraudulent scheme in operation to falsely obtain money on forged and altered paper, and there was certainly sufficient evidence to connect the appellant with the scheme and plan. This being so, it was not necessary to more definitely allege or show Spivey's connection with the mailing of the letters used in connection with, and in the course of, the carrying out of the scheme. It was sufficient to show, as was done, that the mails were used and that the scheme was one which reasonably contemplated the use of the mails. Bogy v. United States, 6 Cir., 96 F.2d 734; United States v. Weisman, 2 Cir., 83 F.2d 470, 107 A.L.R. 293; Smith v. United States, 5 Cir., 61 F.2d 681; Spillers v. United States, 5 Cir., 47 F.2d 893; Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097; Wolpa v. United States, 8 Cir., 86 F.2d 35.

The points made as to the convictions under Section 80 are no better taken. The language of the section is plain and completely comprehensive, and that it was intended to, and does apply to situations of the kind in question here, is equally plain. For, it stands admitted, not only that the Commodity Credit Corporation is an agency of the United States, and that the matters in question were the lending of money on farmer's notes, which come within the scope of its agency, but that the United States, though the stock is nominally held by officials of the Government, is the owner and beneficial holder of all of its stock. This being so, the fact that the stock is not in the name of the United States is immaterial. The force and effect of statutes of this kind, designed to prevent frauds upon the Government may not be frittered away by a mere literal construction. Read as a whole, it is perfectly plain, we think, that the statute includes the Commodity Credit Corporation, a creation of the Government, with its stock by the statutes of its creation, standing in the name

of officials of the United States. Equally untenable is appellee's argument that the Section must be held to be limited to claims against, and as not extending to, negotiations with, the Government. While Criminal Statutes, may not by process of construction, be extended beyond their reasonable and natural meaning, neither may they be, by the same process, deprived of their natural meaning. The statute makes it an offense to "falsify * * * or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements * * * in any matter within the jurisdiction of any department or agency," etc. The facts disclose falsification, tricks, schemes and devices in matters within the jurisdiction of the Commodity Credit Corporation, the Corporation covered by the Act. The fact that the Act in other portions deals with claims against the Government, does not, in any manner take from its force when dealing with other matters than claims.

The third point made against the conviction and sentence under Section 80, that Count five and certain other counts in the indictment erroneously charge the use of a "false bill," whereas the instrument declared on in each of them, is not a bill at all, but something entirely different, is we think, wholly without merit. Each of the counts in question, fully and clearly declares upon the instrument and by quoting it, shows what it in fact is, and if calling the cotton producer's note and loan agreement, declared on in each count, a "false bill," was to misname it, this was mere surplusage and did not at all affect the validity of the counts. Brady v. United States, 8 Cir., 24 F.2d 399. Besides, if these counts be considered defective, this would not avail appellant, for the sentences imposed with regard to them, were made to run concurrently with sentences imposed on other counts which were sufficient to sustain and carry the total sentence to be served. Hartwell v. United States, 5 Cir., 107 F.2d 359; Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966.

The assignments in group two, to rulings on evidence, we find no better taken. Because of the severity of the sentence and the general claims made and reiterated in appellant's brief, that the trial was attended throughout, with rulings both adverse and prejudicial to him, we have not disposed of these assignments upon the meager showing of the brief, but have carefully examined the record for ourselves, to determine whether there was prejudicial error in any of the rulings or proceedings, these assignments are concerned with. We have found none. On the contrary, though the record shows a contentious and frictional approach, calculated to generate more heat than light, in regard to the introduction and reception of evidence, the pages of the record being studded with objections, the greater part of the contentiousness is much ado about nothing, and none of the objections are marked by or point to, a disregard of defendant's substantial rights.

The points with which the third group has to do, the arguments of the district attorney, may be briefly disposed of by saying, that while it does appear that some of the brief remarks objected to were not in good taste, and ought not to have been made, it appears too that their making was not prejudicial error. This is so because, in their nature, they were not so aggravated as to constitute such error, and particularly because the district attorney, upon objection admitted the impropriety of the remarks and withdrew them, and the Judge admonished the jury not to consider them. United States v. Dilliard, 2 Cir., 101 F.2d 829; Jamail v. United States, 5 Cir., 55 F.2d 216; Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799; Cf. Maryland Casualty Co. v. Reid, 5 Cir., 76 F.2d 30.

Neither was there reversible error in regard to any of the assignments coming under the fourth group. And first, as to the refusal of the jury list.

"Defendants are not, as matter of right, entitled to receive the list of jurors prior to the day of trial. The time at which defendants may be given a jury list is left to the sound discretion of the trial court." Wilson v. United States, 5 Cir., 104 F.2d 81, 82.

Viewed abstractly therefore, there is nothing in the point, that the defendant was denied the right to see the jury list until the trial date. Nor is the point strengthened by the claim that defendant was thereby prevented from discovering that one of the jurors was not a qualified juror, in that many years before, in September, 1930, he had been convicted of violating the National Prohibition Act, 27 U.S.C.A. § 1 et seq. and given a suspended sentence. If the juror's con-

viction and suspended sentence would furnish an objection to him as a qualified juror, the objection is mere propter defectum and cannot be assigned as ground for motion in arrest of judgment or for a new trial. Strang v. United States, 5 Cir., 53 F.2d 820; Roush v. United States, 5 Cir., 47 F.2d 444. The record does not show, it does not even suggest, that defendant's right to fully question the jury as it was being organized, was in any way abridged or interfered with. It shows too, that the jury was organized with an alternate juror, the trial was in progress for ten days, and if the defendant had made this supposed disqualification known, immediately before, instead of immediately after the verdict, the juror could have been put aside and an alternate put in his place. A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict. Strang v. United States, supra; Morgan v. Sun Oil Co., 5 Cir., 109 F.2d 178; Haight v. Omaha & C. B. St. R. Co., 97 Neb. 293, 149 N.W. 778. The point under this group that defendant's privilege against self-incrimination was violated, is no better taken. The records, copies of which were in evidence, were not taken from the defendant by any act or agent of the Government, nor was any compulsion put upon him to produce them. The complaint, that the District Judge in the presence of the jury inquired of the defendant whether he had the original of the copied records, and that this was prejudicial error depriving defendant of his privilege against self-incrimination is not well taken, in fact or in law. This is the record. While the witness McCutchen was on the stand, testifying that he had made copies of the Gin and Pooling Records, and counsel for defendant was objecting to the copies as not shown to be exact, "at this point, the court interrupted and propounded the following question: By the Court: 'Have you got the original record?' The following proceedings were then had. The Witness: 'No Sir! He has misunderstood me, your Honor.'"

■ That this colloquy constituted an invasion of defendant's right against self-incrimination, and that because of it, the result of this long and contentious trial must be vacated and set aside, would be contrary, we think to reason and authority. "We do not reverse cases for insubstantial error. Abstract inerrancy is hardly possible in the trial of a case in the federal court; it is never essential to a valid trial there. Jennings v. United States [5 Cir.], 73 F.2d 470; Community Natural Gas v. Henley [5 Cir.], 54 F.2d 59. Too much is said and done about too little in the heat and hurry of a trial, for it all to be important." Maryland Casualty v. Reid, supra [76 F.2d 33].

■ The third under this group of assignments, that discretion was abused in overruling the motion for a new trial is wholly without merit, for, within the discretion of the trial court, the granting or overruling of a motion for new trial, may not be assigned as error, absent clear proof of abuse of discretion. Such proof is wholly wanting here. The judgment is affirmed.

Affirmed.