**W. O. MURRELL, Sr., Appellant,**

v.

**Houston WHITE, Appellee.**

**No. 17701.**

United States Court of Appeals
Fifth Circuit.

Nov. 3, 1959.

Rehearing Denied Dec. 15, 1959.

W. O. Murrell, Sr., Will O. Murrell, Jr., Jacksonville, Fla., for appellant.

Houston White, Atlanta, Ga., for appellee.

Before HUTCHESON, CAMERON and JONES, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought by one lawyer against another, each representing himself in the suit,

the action sought recovery of the reasonable and fair value of legal services rendered by plaintiff to defendant in a Florida disciplinary proceeding.

Denying that he had employed plaintiff as one of his attorneys, defendant alleged: that he and plaintiff were friends of long standing and plaintiff had volunteered his services; that when it appeared that the hearings in the proceedings would be more prolonged than was anticipated, he had voluntarily offered to pay plaintiff $100 per day for each trial day and expenses; that he had paid all the expenses; and that since there was less than 30 days of actual trial work, he owed plaintiff not in excess of $2800.

The case was tried to a jury on testimony of plaintiff's witnesses which fixed the value of his services from $100 to $150 per day in his office and $200 to $300 per day out of the office, including court work and depositions, while defendant's witnesses fixed the value at $100 per day of every court or trial day. There were differences of opinion also as to the number of court days required and the amount of time plaintiff had given both in and out of court. There was a verdict for the plaintiff not for the $15,000 which plaintiff had claimed nor for the $2800 which defendant had admitted he owed, but for $9700, a sum roughly midway between.

Appealing on a record which shows not a single timely objection made or exception taken to the matters now complained of, defendant is here seeking a reversal in effect on the ground that the several specifications of error [1] put forward present matters showing that, though not made matter of complaint until in the motion for new trial, they were of such nature that they entitled defendant to a reversal.

Thus appellant in the dual role of client and counsel, finds himself here in a position which, as a lawyer of experience and ability, he was and is bound to know makes it most difficult if not impossible for him to obtain the reversal that he seeks. In Maryland Casualty Co. v. Reid, 5 Cir., 76 F.2d 30, this court, thoroughly canvassing and as fully and correctly stating the principles governing here, at page 33 said:

" * * * We do not reverse cases for insubstantial error. Abstract inerrancy is hardly possible in the trial of a case in the federal court; it is never an essential to a valid trial there. Jennings v. United States, 5 Cir., 73 F.2d 470; Community Natural Gas Co. v. Henley, 5 Cir., 54 F.2d 59. Too much is said and done about too little in the heat and hurry of a trial, for it all to be important. Things of no moment in their transpiring are not made

---

1. These are:

(1) The court erred in giving extra-special judicial recognition to two of the plaintiff's (lay) witnesses.

(2) The court erred in the colloquy with plaintiff, wherein the court conceded in the presence of the jury, plaintiff's reputation for being a good lawyer.

(3) The court erred in entering judgment where plaintiff's conduct in the case created prejudice.

(4) The court erred in threatening defendant (without any just cause).

(5) The court erred in adjudging defendant guilty of criminal contempt in the presence of the jury.

(6) The court erred in failing to instruct the jury to disregard the contempt proceeding until after the case had concluded and immediately before the jury retired.

(7) The court erred in holding the language used by the defendant to be a contempt.

(8) The court erred in failing to holding plaintiff's question more contemptuous than the answer.

(9) The court erred in repeatedly stating the issue in the presence of the jury, completely overlooking defendant's defense.

(10) The court erred in charging the jury, completely overlooking defendant's defense, failing to mention defendant's defense, and telling the jury defendant claimed plaintiff's services were a gratuity.

(11) The court erred in failing to grant defendant's motion for a new trial.

momentous merely by making record of them. Therefore, though the District Judge is an administrator primarily charged with the just conduct of the trial, he may not ordinarily be put in error merely because an aberration from trial rules has occurred. It is the duty of counsel by objection to call such threatened or actual departure to the judge's attention, and invoke his corrective action, and, if overruled, to make it appear that prejudice has resulted.

"Ordinarily, if his counsel fails to adequately object, or fails to except to adverse action on his objection, a litigant may not complain of what occurred as error, for he will be treated as having assented to it. On the other hand, a trial judge may never abdicate his function, or surrender to counsel the conduct of the trial. It is still his primary duty to oversee and conduct it. Because this is so, he may, and if he fails to, the appellate court may, though no objection is made and no exception taken, correct an error or abdication which has resulted unjustly, by voiding the trial. But this will be done only in extreme cases where the judge's error in permitting the trial to get out of bounds, instead of exercising his function to guide and control it, is of such transcendent influence on the course of the trial as that, though not excepted to, justice requires its being noticed and corrected. * * *"

What was there stated has been affirmed and reaffirmed in theory and in practice in this court and in the federal courts generally, and is embodied in substance in the Federal Rules of Civil Procedure, 28 U.S.C.A. Accordingly, unless the appellant is able to convince us that some at least of the specifications he now puts forward present an unexcepted error of abdication so glaring that its effect upon the conduct of the trial may not be doubted, he cannot prevail.

From an examination, of the specifications, of what appears in the record, and of what is said about them in the briefs, in the light of this principle, it is quite manifest, we think, that on their face nothing of substance is presented in any of them resembling or suggesting such an error unless it is the specifications Nos. 5, 6, 7 and 8, dealing with, or in some way relating to, the action of the court in adjudging the defendant guilty of contempt in the presence of the jury.

We turn then to the record with respect thereto. While the defendant was on the stand as a witness, near the close of his case, the following occurred:

"Q. (by Mr. White) Now, during the course of the case you told me how important it was to you to keep from being disbarred many, many times, didn't you, and the reason was not only you wanted to save your professional life but because you were afraid that the Civil Communications Commission would deny your right to a television station in Orlando? A. That is a lie.

"The Court: Counsel, the Court will have to take notice of that—

"Mr. Murrell: I am sorry. I apologize.

"The Court:—of such contempt committed in the presence of the Court—

"Mr. Murrell: I am sorry.

"The Court:—and will certify— the Court Reporter has the language —and will impose a fine of one hundred dollars on you, and you will stand committed to the Marshal until it is paid. Proceed." "Marshal, it is about our recess time, anyway. We will recess ten minutes.

"(A short recess was then taken)

"The Court: Proceed.

"Mr. Murrell: I would like again to apologize to the Court and Jury. I lost my head. I am awfully sorry. It will not happen again.

"The Court: Very well.

"Mr. White: I believe I will stop, if the Court please, with my cross-examination.

"The Court: Very well." "Witness excused."

After brief testimony in rebuttal, the case was closed, and the colloquy set out in the margin[2] occurred.

At the conclusion of plaintiff's argument to the jury, the defendant stated:

"May it please the court, in view of the fact that I feel that this jury understands the issue, no argument is required, and that I tendered $2800, and that is in evidence, I don't want to rehash a dead horse any more.

"The Court: You have no argument then to present to the jury?

"Mr. Murrell: No, sir."

At the conclusion of the charge, the defendant, to the question whether he had any objection to it, answered:

"I really have no objection, but I think, in view of the fact that the court did fine me for contempt, you should tell the jury that that should not interfere or have any bearing whatsoever on the case."

and the Court, in response to the request, so charged.[3]

Upon such a record, it is, we think, too plain for argument that nothing occurred on the trial of the case of which the defendant may now complain as reversible error. He did not ask a mistrial because of the contempt order. He did not complain of it at all. Indeed, he apologized to the court and jury, stating, "I am sorry I lost my head. It will not happen again.", and he later asked for and obtained the requested charge set out in note 3, supra.

Under these circumstances, to put the trial court in error with respect to proceedings which defendant himself caused and brought about and as to which he took no exception, but in open court agreed that they had been correctly

---

2. "The Court: Let me ask counsel whether you have any requested charges under the rule?

"Mr. Murrell: I have requested charges, but I think the issue is simple. It is whether or not there was a contract or not a contract and the reasonable value of the services. That is all. I admit the $2800. I don't know if it would take much.

"Mr. White: If your Honor please, I have no written requested charges. There is only one issue in the case I can see, and that is whether or not my services as here are reasonable services in value and whether or not I made the contract that they claim I did. I don't know of any two issues in the case but that. I think as to the first the burden is on me and as to that the burden is on them, as to the contract.

"The Court: Let me ask counsel, what, in the opinion of counsel, will be necessary for you to present by way of argument of the case to the jury.

"Mr. White: How much time, are you asking?

"The Court: How much time.

"Mr. White: Well, sir, I certainly would not take over half an hour.

"The Court: How much for the defendant?

"Mr. Murrell: I don't think the case needs any argument. I think the jury understands it fully and completely. If we had been representing clients it might be better, but since I represented myself and Mr. White represented himself, I think they understand it.

"The Court: Let the Court understand whether you want any time allotted to address the jury in connection with the case.

"Mr. Murrell: May I answer that by saying I would like to answer that question if he is going to argue it, I may or may not.

"The Court: Very well. You wish to determine, then, at the end of plaintiff's summation whether you wish to address the jury or not?

"Mr. Murrell: I can answer it then."

3. The Court: "Gentlemen of the Jury, the Court overlooked to instruct the jury in connection with the unfortunate incident which happened in the courtroom this morning, on account of which the Court adjudged the defendant guilty of contempt. The jury are instructed that you should in nowise let that incident prejudice the defendant's case in your estimation. In other words, the jury should determine the issues in this case and decide the rights of the parties as though that never happened. It has nothing to do with the rights of the defendant in this case, whatever they are according to the law and the evidence in the opinion or judgment of the jury."

taken, would be in effect to reward the defendant for the course he deliberately took, of speculating on the chance of a jury verdict and, then, when the verdict had gone against him, of assigning error.

The judgment was right. It is affirmed.