**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wallace Howard SMITH, Defendant-
Appellant.**

No. 28302.

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1970.

Rehearing Denied Dec. 4, 1970.

1969, transmitting telephonically a threatening communication from New Orleans, Louisiana, to Houston, Texas, and that this communication threatened to injure the Honorable Charles Raymond Judice. Judge Judice was Judge of Corporation Court # 3, City of Houston, Texas.

Appellant asserts five grounds of error with respect to his conviction: (1) failure of the government to prove an essential element of the crime; (2) prejudicial curtailment of cross-examination of Judge Judice and his clerk Paul Orpys Neal; (3) admission of testimony relating to prior threatening calls by Smith to the judge's office which were remote in time and unrelated to the March 1, 1969 call; (4) prejudicial interruption by the trial court of appellant's closing argument to the jury; and (5) the verdict of guilty was conditioned upon the trial judge's granting leniency and hence was a compromise verdict and not a responsive verdict.

We find that prejudicial error is not made to appear in any of the particulars specified and affirm the judgment.

Robert J. Stamps, New Orleans, La. (Court-appointed, for defendant-appellant.

Richard M. Olsen, Asst. U. S. Atty., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before GEWIN, GOLDBERG and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Wallace Howard Smith appeals a judgment of conviction and sentence to imprisonment for three years[1] following a jury verdict of guilty. The single count indictment charged appellant with violation of Title 18, U.S.C., Section 875(c),[2] for willfully and knowingly, on March 1,

I.

Appellant's first contention, that the government failed to prove an essential element of the crime, is based on a claimed failure of proof that it was he who in fact made the threatening long distance call. He asserts his motion for judgment of acquittal[3] should have been granted in the absence of definite proof of the identity of the caller. The government's proof tended to show the following:

 The South Central Bell Telephone Company's coin phone records[4] for the New Orleans area indicated that

1. Sentence was imposed under Title 18, U.S.C., Section 4208(a) (2) making Smith eligible for early parole.

2. "(c) whoever transmits in interstate commerce any communication containing any threat to kidnap any person or *any threat to injure the person of another*, shall be fined not more than $1,000 or imprisoned not more than five years, or both". (Emphasis added)

3. Appellant offered no evidence in his own behalf. He asserts his reliance on the presumption of innocence.

4. Government exhibit G–1.

on Saturday, March 1, 1969, between the hours of midnight and 7:00 a. m.[5] a night person-to-person operator handled a long distance telephone call from a specified coin telephone in New Orleans, Louisiana, to the listed home number of Judge Judice in Houston, Texas. Roy C. Bates, South Central's district accounting manager and custodian of the records, testified that the records show that only one call was made from the New Orleans number to the Houston number on Saturday, March 1, 1969. Judge Judice testified that the operator identified the long distance call as originating from New Orleans, Louisiana. He said that he recognized appellant's voice from past acquaintance and hearing him speak many times before, and further that the person speaking identified himself as appellant. Smith's physical presence in New Orleans at the time in question near the callbox location was established. Viewed in the light most favorable to the government, this evidence was amply sufficient to support a reasonable inference by the jury that the person calling was the appellant. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1944); Gilliland v. United States, 5 Cir. 1967, 385 F.2d 912; Ruiz v. United States, 5 Cir. 1967, 374 F.2d 619.

## II.

Smith asserts that the trial court prejudicially curtailed his cross-examination of the witnesses Neal and Judice.

Following the direct examination by the appellee of Judge Judice's clerk, Paul Orpys Neal, appellant called for the production of an alleged Jencks Act [6] statement supposedly given by Neal to F.B.I. agents. On brief, appellant concedes that the statement he sought was given to the Houston police, not the F.B.I. After an in camera inspection of the document the trial judge denied appellant's Jencks motion, ruling that the statement was not relevant.

Later, during appellant's cross-examination of Judge Judice, his counsel attempted to question the judge about his relation to the "Texas House" and his knowledge of "George Griffin".[7]

---

5. Judge Judice on direct examination testified that he received the threatening call around 3:25 a. m.

6. Title 18, U.S.C., Section 3500.

7. "Q Are you familiar with the place called the Texas House?
MR. HAND (the government attorney): Your Honor, I will object to the relevance of the Texas House to this case.
THE COURT: Well, it may become relevant. I don't know; overruled.
A Yes, sir. It's a facility in Houston that we use to try to rehabilitate people who have alcoholic problems.
BY MR. STAMPS:
Q Has 'Shaky' George been in Texas House?
MR. HAND: Objection. 'Shaky' George has no relevance to this case.
THE COURT: Sustained. Let's deal with this case.
BY MR. STAMPS:
Q Has 'Red' Smith been in Texas House?
A Yes, sir, I helped to get him in there.
Q How many times, and for how long?
A That I don't know. Once I try to get a person in, it's out of my hands.
Q What are the people in Texas House required to do?
MR. HAND: I object to that question, Your Honor. What relevance could that possibly have to this case?
THE COURT: I sustain that objection. I think you could rephrase it.
BY MR. STAMPS:
Q Are they required to do any work in Texas House?
A I don't think so. It's a rehabilitation center.
Q For what period of time are people required to be in Texas House?
MR. OLSEN: I object, Your Honor.
THE COURT: Let's try this case, counsel. Let's not try the Texas House.
MR. STAMPS: Your Honor, this is all relevant. I think all of these things are directly related to this case.
THE COURT: No, I don't think so.
BY MR. STAMPS:
Q Did you at any time have any personal knowledge that this defendant created any type of disturbance at Texas House?
MR. OLSEN: I object, Your Honor. This is the same line of questioning.
THE COURT: Sustained.
MR. STAMPS: Your Honor, to which sustaining of the objection I would respectfully object to Your Honor's rul-

As the quotation from the record in the margin indicates, the government's objection to the question about "Shaky" or "George" Griffin was sustained. The first objection to questions about the Texas House was overruled. When the subject was further pursued as to work required of inmates of the Texas House, disturbances created there by the appellant and like questions, the government's objection was sustained.

We find prejudicial curtailment of cross-examination in neither the Neal nor the Judice situations. As to Neal, it is clear the statement was made to a Houston police officer and not to a *government agent* as the Jencks Act contemplates.[8]

■■ We do not find substance in the suggestion that the Houston police qualify as agents of the federal government. But assuming arguendo that the statement was covered by the Jencks Act, it was inspected by the court in camera and determined to be irrelevant to the subject of the direct examination. The purpose of a trial judge's in camera inspection is to keep collateral and confusing issues from the jury. Cf. Palermo v. United States, 360 U.S. 343, 354–355, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), rehearing den. 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 94 (1959). Further, appellant's counsel was permitted—despite the trial judge's ruling—to read the statement prior to undertaking to cross-examine Neal. Counsel for appellant despite actual knowledge of the contents of the statement, fails on brief to make its exact nature clear to us. We are not able to determine what connection, if any, it has with the subject of Neal's direct examination. Prejudice is not demonstrated with respect to the trial court's ruling on the Jencks motion.

We turn to the claim of prejudicial restriction of the cross-examination of Judge Judice. Reasonable latitude was afforded on the "Texas House" question,[9] even though continued probing in this fringe area finally resulted in objections being sustained on grounds of non-relevancy.

Questioning as to George Griffin was ruled out from the first objection. Allowance of questions on cross as to collateral matters is necessarily a matter within the wide discretion committed to the trial judge in his overall control of the trial. Certainly there was no connection with the phone call evidence. George Griffin's presence at the Texas House, his connection with it, and Judge Judice's knowledge of these matters were all far afield from any questions involved at trial. Appellant did not at trial make any tender of proof or any explanation of the purpose of the line of questioning so as to aid the trial judge in ruling. His brief here is likewise silent of any suggestion as to relevancy of the attempted examination.

■ The right to cross-examination is one of the essentials to a fair trial, Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), but, as appellant must have recognized when he cited Dickson v. United States, 10 Cir. 1950, 182 F.2d 131, 133, essential to the absolute right to cross-examine is some minimal demonstration of materiality to the issue before the court:

"The trial court is invested with a broad discretion in the matter of permissible cross examination of a witness, *but * * * the court may not limit cross examination so as to prevent bringing out matter material to the issue*". (Emphasis added) 182 F.2d at 133.

---

ing, because I think these things are highly pertinent.
THE COURT: All right. I don't think so."

8. Title 18, U.S.C., Sec. 3500(a) provides:
(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United

States which was made by a Government witness or prospective Government witness (other than the defendant) *to an agent of the Government* shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

9. See the record, footnote 7, supra.

■ We are not unmindful of recent expressions [10] of ours concerning the right to unrestricted cross-examination of key witnesses on matters *material* and *vital*. This holding in no sense encroaches on the decisions set out in footnote 10. The questions here were unrelated to the merits of the issues before the court.

No prejudicial error is made to appear with respect to the limitation of appellant's right to cross-examine Judge Judice.

### III.

■ Next it is urged that it was error to admit Neal's testimony concerning several earlier threatening local Houston calls supposedly made by appellant to Judge Judice's office. There was also testimony that criminal charges had been lodged by the State of Texas based, on the calls, but there had been no further action on the charges. Objections were made to this evidence on the grounds of remoteness and non-relevancy. . These are essentially the grounds urged here as claimed error in the reception of the evidence. The dates of the prior calls were in 1967, 1968 and the indictment year 1969 prior to March 1. We are not convinced that error occurred in this respect. Although some of the calls were remote in time, they continued until a time near March 1, 1969. They were similar in content to the March 1 call. The evidence was admissible as tending to establish intent to commit the offense under indictment and trial and as establishing a criminal scheme to threaten Judge Judice by telephone. See United States v. Greenberg, footnote 10, supra; Gilstrap v. United States, 5 Cir. 1968, 389 F.2d 6, 9; Pardo v. United States, 5 Cir. 1966, 369 F.2d 922, 924–925; Weiss v. United States, 5 Cir. 1941, 122 F.2d 675, 682, and United States v. Dutsch, 4 Cir. 1966, 357 F.2d 331, 333. That the prior calls were local as opposed to the interstate nature of the March 1 call is of no moment. *Dutsch*, supra, is very closely in point on the facts. It also involved a prosecution under Title 18, U.S.C., Section 875, for a threat to injure a person communicated telephonically interstate. The Fourth Circuit approved the reception in evidence by the trial court, under proper limiting instructions, of testimony as to an incident occurring five years before the indictment phone call.

### IV.

Smith next asserts that prejudice to him resulted from interruptions by the trial judge of his counsel's closing jury argument. Two episodes were relied upon. The first statement by the court was in response to an objection by government counsel when defense counsel stated to the jury:

"Now, you heard the testimony of the clerk of the judge over there, but does that prove this defendant guilty of this particular charge? It didn't even prove him guilty of the other particular charge".

The following colloquy ensued:

"MR. HAND: (government counsel) Objection, Your Honor. That's clearly outside the record. We are not concerned in this case with whether the defendant was proved guilty of any other charge. We are only concerned with this one right here. I hate to interrupt the argument, but I don't think it's proper, Your Honor.

THE COURT: I agree with you. The jury will disregard any reference to any other charge or any other case other than this one.

MR. STAMPS: Your Honor, that evidence was reflected in the record, and since it was part of the evidence, I thought I could comment

10. See, e. g.: United States v. Stamps, 5 Cir. 1970, 430 F.2d 33 (dissenting opinion) ; United States v. Greenberg, 5 Cir. 1970, 423 F.2d 1106; Grant v. United States, 5 Cir. 1966, 368 F.2d 658 ; Beaudine v. United States, 5 Cir. 1966, 368 F. 2d 417, 420–423.

on it to the jury. They heard all the evidence.

THE COURT: Let's get on.

MR. STAMPS: Your Honor, I respectfully object to the Court's remark to the jury. I think this is proper argument since it was brought out in the testimony during the trial of the case."

Counsel resumed his argument and the second episode occurred soon thereafter, when the trial judge interrupted defense counsel's jury argument without the prod of an objection. We think it is important to note that there was an intervening objection to argument similar in nature to that just quoted. To put the entire matter in perspective, we set forth the trial transcript verbatim, resuming our quotation immediately following the portion above quoted:

"Now, we were talking about smoke screens. What is a smoke screen? You have heard, in the way of circumstantial evidence, that this man made this particular phone call in New Orleans. There has been a lot of talk about a lot of other calls, a lot of other calls, and I submit to you that if this Judge was in great fear of his life, and these calls originated in 1967 and 1968, and continued on for a long period of time, this man being a Judge in the State of Texas with the full power of that office, and being of considerable power and authority in that state, would have seen that this man was tried on that charge over in Texas long before now.

MR. HAND: Your Honor, I object to that line of argument, and I insist that counsel not go into that other matter, and I believe the Court has so ruled.

THE COURT: Yes, let's stick to this case, counsel.

MR. STAMPS: So we come back to one particular thing, circumstantial evidence. Now, I am not going to instruct you on the law; the Judge will do that. It's not my position, to do that. My obligation was to get the facts before you, and I hope I have done that.

You will remember my cross examination of Judge Judice. I asked him, 'Did you know that night what particular number that call came from,' and he said he didn't know, but he knows this particular man.

Now, I don't know what water has gone under the bridge between these two men, and you don't know either, but as to why this defendant didn't take that stand and didn't testify, you can't hold that against him under the law. He does not have to prove himself innocent. He is innocent until they prove him guilty beyond a reasonable doubt.

I submit to you that the big question, the big issue before you people, is the issue of reasonable doubt.

Judge Judice testified he was in fear as a result of these phone calls, but that doesn't prove in the least that my client made those calls. I can look at the defendant sitting here, as you all can, and I really don't think he is that violent. He looks just like any other hard working man to me, and remember, his former employer testified here that he was a good worker. And what ability has been proved that he has the ability to do such a thing?

THE COURT: Now, let me say, counsel. I don't want to interfere with your argument, but it isn't incumbent upon the government to prove that a man has the ability to carry out threats, or to make threats. That is not an issue in this case, whether he has the ability or doesn't have the ability to carry out threats. Let's stick to the record.

MR. STAMPS: All right. Could I make a formal objection to Your Honor's comment in the matter?

THE COURT: Yes; surely. Just say you object."

No point is made on brief with respect to the second government objection to comment about the earlier Houston calls

to Judge Judice. But this passage illuminates very clearly, it seems to us, the thrust of the first argument objected to by government counsel, and indicates the correctness of the trial judge's ruling that is under attack here.

Whether or not prosecution had resulted from the earlier calls, whether Judge Judice by reason of his influence was in a position to bring such prosecution about, the result of such prosecution if it in fact occurred, and similar topics were subjects outside the limits of permissible free comment upon matters in evidence, namely the fact that earlier threatening calls had been made by Smith.

■ The first ruling objected to was proper in the exercise of the trial judge's right to restrain the scope of argument within reasonable limits as to germaneness and relevancy. See Baron Tube Co. v. Transport Insurance Co., 5 Cir. 1966, 365 F.2d 858; Shaw Warehouse Co. et al. v. Southern Railway Co. et al., 5 Cir. 1961, 288 F.2d 759, rehearing denied 294 F.2d 850, cert. denied 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962); Maryland Casualty Co. v. Reid, 5 Cir. 1935, 76 F.2d 30.

■ As to the second episode, we think the court did not unduly hamper or restrain reasonable argument when it interrupted *ex mero motu* to point out to counsel that ability to carry out the alleged threats was not an element of the offense under indictment, and was not a matter the government was under obligation to prove. This was a correct statement of the law. While it is the more usual practice for a trial judge to wait for an objection before intervening in argument before a jury, we know of no respectable authority that he must do so if the argument is clearly based upon an erroneous concept of governing law. Appellant cited no authority on brief or in oral argument.

We have never hesitated to reverse trial judges for unduly interfering in the examination of witnesses or the argument of counsel or for expressions of opinions as to the defendant's guilt or for taking over the conduct of the prosecution generally. See, e. g. United States v. Lanham, 5 Cir. 1969, 416 F.2d 1140; United States v. Reed, 5 Cir. 1969, 414 F.2d 435 (dissenting opinion), rev'd en banc 5 Cir. 1969, 421 F.2d 190; Bursten v. United States, 5 Cir. 1968, 395 F.2d 976; Papalia v. United States, 5 Cir. 1957, 243 F.2d 437; Zebouni v. United States, 5 Cir. 1955, 226 F.2d 826; Blumberg v. United States, 5 Cir. 1955, 222 F.2d 496.

■ But this and other courts have been at pains often to point out that trial judges in the federal system are more than mere umpires in sporting contests. They are under a positive duty to preside in such manner as to keep a trial within reasonable bounds and to promote the ends of justice. They must be left free to exercise wide discretionary powers to achieve these goals, so long as fairness and impartiality are observed. We have no hesitancy in determining that abuse of such discretion is not shown in this instance. See generally Travelers Insurance Co. v. Ryan, 5 Cir. 1969, 416 F.2d 362; Bank of Utah v. Commercial Security Bank, 10 Cir. 1966, 369 F.2d 19, cert. denied 386 U.S. 1018, 87 S.Ct. 1374, 18 L.Ed.2d 456; Union Carbide and Carbon Co. v. Nisley, 10 Cir. 1962, 300 F.2d 561, cert. dismissed Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46; Maryland Casualty Co. v. Reid, 5 Cir. 1935, 76 F.2d 30; 53 Am.Jur. Trials, Sec. 76; and cases cited therein.

## V.

We come finally to Smith's contention that the guilty verdict was a compromise verdict because it was contingent on a recommendation of leniency. Close examination of the record refutes this point.

As appellant asserts, in Cook v. United States, 5 Cir. 1967, 379 F.2d 966, we stated that "there is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination".

The guilty verdict below was received under circumstances which do not indicate the least uncertainty or doubt on the part of any juror. We do not find a basis in the record for even a suggestion that the verdict was conditioned in any respect upon the carrying out of the recommendation to leniency contained in it.[11]

Not made a part of the record on appeal but strangely enough set forth in *appellant's* brief and not denied by appellee's brief is an incident which to our mind demolishes any possible contention that any juror had any reservation whatever when he joined in the verdict of guilty. We quote from appellant's brief, page 10:

"After all closing argument, and the Judge's instructions on the law, the Jury retired. They retired at approximately 1:00 p. m. At approximately 3:30 p. m., the Trial Judge summoned defense counsel to the bench and informed him that the Jury had written a note to him, *in which they had requested his feelings with regard to a guarantee of leniency.* As understood by the defense counsel, the Judge at that time answered the Jury by note, *that he could not guarantee anything.* At approximately 4:50 p. m., the Jury returned, and as stated by the Minute Clerk in the record the Jury found the defendant, guilty. However, the minute clerk did not read the last part of the verdict which contained a 'recommendation for leniency'." (Emphasis added)

First and parenthetically we point out that the quoted portion of the trial transcript, supra, completely refutes the claim that the whole verdict, including the "recommendation to leniency" portion, was not read. The quoted material shows that it was read and was commented on to the jury by the trial judge at that time.

We revert to our main purpose in setting out the relation of this incident in Smith's brief. We perceive no way in which it can be seriously maintained that the jury was under any false impression as to the effect of the recommendation to leniency. An hour and twenty minutes before the jury returned its verdict

---

11. We quote extensively from the trial proceedings respecting the submission and return of verdict.

The Court (at the conclusion of the jury instructions):

"Now, gentlemen, all twelve of you must agree upon a verdict for there to be a verdict. You will elect your own foreman, and he will write the verdict at the bottom of the first sheet of the indictment, 'We the jury find the defendant not guilty' or 'We the jury find the defendant guilty,' and the foreman will sign and date it.

Any suggestions, gentlemen?

MR. STAMPS: I have none, Your Honor.

MR. HAND: No, sir.

THE COURT: All right, the marshal will attend the jury. Court will stand recessed."

(Recess taken)

When the jury returned into court the following transpired:

"THE COURT: Has the jury reached a verdict?

THE FOREMAN: We have, sir.

THE COURT: Pass it up please.

(Verdict form tendered to the Court)

THE COURT: Read the verdict.

THE CLERK: Criminal Action No. 31,-659, United States of America vs. Wallace H. Smith, also known as 'Red' Smith. 'We the jury find the defendant guilty, with recommendation for leniency.' Signed, Edward Beshoner, Sr., Foreman. Gentlemen of the jury, is that your verdict?

THE COURT: Do you want the jury polled?

MR. STAMPS: Yes, sir.

THE COURT: Poll the jury."

The jury was individually polled by the Clerk and then the judge stated:

"Let the verdict be recorded.

"Gentlemen, let me say this, with reference to your recommendation for leniency, you had a perfect right to make such a recommendation, but the Court is not bound by that. However, I want to assure you that your recommendation will be given full consideration by the Court in imposing sentence in this case. Your recommendation will be followed if I think it is justified. Thank you, gentlemen. You may be excused, subject to call."

they received a note from the trial judge as to leniency *that he could not guarantee anything.*

The point under consideration is completely without substance.

The judgment of the lower court is Affirmed.