## OTTO v. UNITED STATES.

Circuit Court of Appeals, Seventh Circuit. November 28, 1928.

No. 4061.

Robert E. Curran, of Superior, Wis., for appellant.

Harold E. Hanson, of Stoughton, Wis., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The indictment charges, in the words of the statute (section 3258, R. S.; 26 U. S. Code, § 281 [26 USCA § 281]), that appellant Otto "did have in his possession, and under his control, a still and distilling apparatus set up for the purpose of manufacturing intoxicating liquor, without having registered the same with the collector of internal revenue for the district aforesaid by subscribing and filing with said collector of internal revenue duplicate statements in writing setting forth the particular place where said still and distilling apparatus was set up, the kind of still, its cubic contents, and the owner thereof and his place of residence, and the purpose for which said still and distilling apparatus had been or was intended to be used."

The judgment of conviction is assailed upon two grounds: (1) That the evidence wholly fails to show that the still was set up; (2) that the evidence wholly fails to show that Otto was in possession or control of the still.

There was evidence to show that the still was found in a log hut located in the timber of a northern Wisconsin farm; that on the March day when the officers entered the hut there was a fire burning in the stove therein; that there were 29 barrels of mash within, some fermenting, and some fermented ready for distillation, 300 pounds of yeast, 22 100-pound bags of sugar, 150 gallons of gasoline, 15 or more 5-gallon jugs, and the still, with all its parts present in the room. Its boiler, of 150 gallons capacity, was in place on an iron frame, and under it was installed a five-burner gas plate, connected with a gasoline pressure tank having gasoline therein. About five feet away there was set upon a wooden frame the cooler of the still, with the usual coil therein, the cooler being filled with cold water. Lying on the floor was the dome of the boiler and the pipe for connecting the gooseneck of the dome with the upper end of the coil in the cooler. The parts constituted a complete still, and required only the setting of the dome on the boiler and adjustment of the connecting pipe to operate the still. There was evidence that the only opening into the boiler through which the mash could be poured was the opening into the dome, so that each time the boiler was filled with mash the dome had to be taken off and the connecting pipe removed.

This was a simple operation; and to make the joints tight a flour dough or paste was smeared upon them, and there was on the floor near the still a pail of flour, evidently for such purpose.

Otto and one Anderson were in the hut, evidently working. Otto's car was at the end of the trail, a short distance from the hut, and near the car lay some sacks of coke and hard coal, some 5-gallon jugs, and a bag of corks. It does not appear that the still had been operated, and no distilled liquor was found.

The purpose of the installation of the still in this place, where everything seemed in readiness to begin or continue the process of distillation, is too apparent to admit of discussion. But was the still "set up" within the meaning of the statute? We can see no room for other than an affirmative answer. It was "set up" in the same sense as would be a tea or coffee pot with top removed for putting in the intended ingredients. In Colasurdo v. United States (C. C. A.) 22 F.(2d) 934, the statutory words "still set up" were defined to be "capable of being used." The still there was held to have been "set up" although certain essential parts were missing, which the plaintiff in error in that case was bringing up when apprehended. Under the law of operation of this still, it was as much set up in the condition the officers saw it as it would have been had a cooking of mash been just completed and the dome removed for another filling. It required but the putting in of the mash and the placing of the dome and pipe in position, to have it ready for lighting the burners.

As bearing on the question of Otto's possession or control of the still, the evidence is hardly less convincing. In addition to the circumstances above pointed out, it tends to show that when the officers came there Otto was inside, with overalls on and a hammer in his hand, evidently doing some work. He took off his overalls and hung them up, saying, "I won't need these any more; I guess the jig is up." Being told, in response to his question, that the officers came there by a roundabout route, he said, "I guess you did; you wouldn't have found us here, if you had come down the straight road." He told one of the officers he would give him $1,000 to have the charge placed under the state law, instead of the federal.

Under these circumstances, it is small wonder that the jury did not give credit to the testimony of habitual offender Anderson who was there with Otto, and who escaped from the officers, but appeared at the

trial as Otto's witness, testifying that he and another man owned the still, and that Otto's only connection with the affair was to drive Anderson out that morning from Superior, and that Otto was merely waiting around for the other man to appear to pay the $10 which was agreed to be paid him for taking Anderson out.

In this state of the record, we cannot say there was no evidence to warrant the jury's finding that Otto was in the possession and control of a still set up for the purpose of manufacturing intoxicating liquor, without having registered the same as required by law.

The judgment is affirmed.