Lee GILLILAND, Wilmon Roy Green
and Melvin Franklin Pearce,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 24324.

United States Court of Appeals
Fifth Circuit.

Dec. 1, 1967.

Edwin A. Carlisle, Carlisle & Chason, Cairo, Ga., for appellants.

Walker P. Johnson, Jr., Asst. U. S. Atty., Macon, Ga., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before COLEMAN and GOLDBERG, Circuit Judges, and HANNAY, District Judge.

COLEMAN, Circuit Judge.

After a jury trial, all three appellants were found guilty under a four Count indictment charging possession of a still, 26 U.S.C.A. §§ 5179(a), 5601(a); carrying on the business of a distiller without giving bond, 26 U.S.C.A. §§ 5173, 5601(a); carrying on the business of a distiller with intent to defraud the United States, 26 U.S.C.A. § 5602; and working at a still where no sign was placed and kept, 26 U.S.C.A. §§ 5180, 5681(c).

The sole issue raised by this appeal is the sufficiency of the evidence to support the convictions. We of course, apply the time honored rule that in view of the verdicts the evidence must be considered in that light most favorable to the United States and if there is substantial evidence to support the judgment then the convictions must be affirmed, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1944).

The thousand gallon still, filled with mash, about ready to run, was located in an underground room constructed be-

neath the floor of a chicken house at the home of the appellant Pearce in a rural, generally wooded, area, a few miles from Cairo, Georgia.

Pearce lived in a trailer house. The appellant Green was constructing a home over and to encompass this trailer house. He and his employees had been engaged in this activity for sometime, the exact duration not being established in this record.

From July 12, 1966, to July 14, the enforcement officers had this place under constant surveillance. What they saw as to the activities of Gilliland and Pearce, which the jury credited in its verdict, was unquestionably sufficient to sustain the convictions of these appellants and a detailed discussion of the proof against them would be of no precedential value.

As to Green, the evidence is nothing like so satisfactory. In its case in chief, the government proved only that on July 12th Green was seen handling some lumber and talking to co-defendants around the house construction site, which was separated by a fence from the chicken house under which the still was buried. The officers said they could smell the odor of mash "real strong" that day. On the first day, Gilliland, an employee of Green's on the house construction job, was seen coming out of the chicken house and joining both Green and Pearce near the trailer, as above noted. The officers were too far away to overhear any conversation among these parties. Green was not seen again until about ten minutes before 2 o'clock on the afternoon of July 14. He drove up in his pick-up truck, with a Negro boy as a passenger. He got out of the truck, went through the gate in the fence separating the trailer house from the chicken house, was followed by the boy, went to the side door of the chicken house, unlatched the door, entered, and relatched it. Green was carrying a small brown paper sack containing a loaf of bread and vienna sausage. The officers then rushed in and arrested the defendants, just as Gilliland was coming up through the hole in the floor which led to the still below.

*This is the sum of the evidence against Green, as adduced on the case in chief.*

There was no motion for a directed verdict at the close of this proof and Green proceeded to take the stand in his own defense. He categorically denied prior knowledge of the still as well as carrying any paper sack, containing food, saying that he had eaten lunch in town with his wife before coming out to the Pearce premises. Had it not been for the latter denial it might have been a reasonable hypothesis that Green was simply bringing lunch to his employee, Gilliland, supposed to be at work on the new house. On the other hand, Green claimed that he went toward the chicken house because Gilliland had called him to "come here a minute". This might have been a reasonable explanation, but the hovering officers said that they heard no such call so it must be assumed that the jury believed no such summons to have occurred.

On cross examination, by way of impeachment, the Government proved that Green had pleaded guilty to the illegal transportation of liquor in 1965, to the unlawful attempt to manufacture whiskey in 1961, to the possession of distilling apparatus on the same date, and to the possession of non-tax paid liquor in 1956. This, of course, constituted no proof of appellant's guilt in the incident of July, 1966. It may very well, however, have been a factor in causing the jury to disbelieve Green's denial of guilty complicity in the still operation.

In our opinion, the controlling question nevertheless remains:

Assuming all the affirmative facts hereinabove related, were they insufficient as a matter of law to establish the essential elements of the offenses charged?

On the one hand it cannot be doubted that Green had a legitimate purpose for being at the Pearce premises. He was building a house. His presence, therefore, was not an unexplained one and if it stopped at that it was a legitimate one.

On the other hand, if the officers could smell the mash on July 12th it might be assumed that Green should have smelled it. Generally speaking, however, without exploring all applicable theories and principles, defendants are not to be convicted on assumptions. We note that Green never went near the still on July 12th and did not so much as return that night, the next day, and th enext night or the next morning to the general premises. It rained heavily on the thirteenth, which would have inhibited building operations.

Another problem is that the officers could have taken the still at any time after July 12th. The testimony shows that they knew Green and they knew that he had a record. It seems obvious that they were hoping to catch him and for two days and nights they patiently waited for him to go to the chicken house. Just as soon as he did go, they did not wait to see him do anything which would have indicated his guilty complicity in the distillery operations. They rushed in and arrested him.

All that really can be said is that he was in the chicken house after lunch time, with a sack of bread and sausage in his hand. Simultaneously the man who worked for Green on the house job, Gilliland, came up out of the hole where the still was, he had been in the chicken house for a good while previously, and he had been seen to come out of it on July 12th.

■ It may with no difficulty be discerned that this evidence was insufficient to support a conviction for possession, custody, and control of the still. We think this was settled in United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965), citing Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818. Green was not shown by the evidence here to have participated in the distilling operations, or to have handled any of the products of the still, or to have served as a caretaker, or watchman, or lookout, or in any other similar capacity. The District Court should have granted the motion for a directed verdict, offered at the close of all the proof, as to Count I, the possession Count.

The evidence, as herein recited, is totally devoid of proof that Green worked at the still and Count IV should likewise have been dismissed.

Counts II and III charged carrying on the business of a distiller (1) without having given bond and (2) with intent to defraud the United States of the tax imposed thereon. The gravamen of both Counts was "carrying on the business of a distiller".

In Matthews v. United States, 5 Cir., 1949, 177 F.2d 278, the appellant walked down a path toward the distillery and was arrested at a point 30 or 40 paces from the still. He was carrying a pasteboard box containing groceries. This Court pointed out that he was not shown previously to have been at the still and that there was no other evidence of guilt. We held that the evidence was wholly insufficient to sustain the conviction, which had included, *inter alia,* the carrying on of the business of a distiller.

In Girgenti v. United States, 3 Cir., 81 F.2d 741, the Court held that the possession of old clothes, sandwiches, and a revolver when found present at a still was as consistent with innocence as guilt [cited by this Court in Vick v. United States, 216 F.2d at p. 231].

In Vick v. United States, 5 Cir., 1954, 216 F.2d 228, the appellant was seen sitting on the ground about ten or fifteen feet away from the distillery at the time of the raid and attempted to run away from the arresting officers. The still had been under observation for two or three weeks and Vick had not previously been seen. A guilty participant at the still was Vick's brother. The Court disposed of the case with this language:

"Was then the jury warranted in deducing from the evidence inferences which excluded every reasonable hypothesis but that of guilt?

We think not. Appellant was seen doing no work at the distillery; he

had no mash or distillery products on his clothing; he had a shotgun and the woods were good hunting territory. His flight is some evidence against him, but, under the circumstances of this case, flight alone is weak evidence of guilt. Appellant may have fled because of a sense of guilt, or because he thought that his presence at the distillery was a suspicious circumstance which might lead to his indictment, or because he did not want either to disclose the guilt of his brother and his nephew, or to be punished for contempt for refusing to do so. One motive is about as likely as another. Appellant may be guilty, but his conviction cannot rest upon mere conjecture and suspicion. The evidence does not prove him guilty beyond a reasonable doubt and is not sufficient to warrant the jury in so concluding. The judgment is, therefore, reversed with directions to grant the appellant's motion for judgment of acquittal. See 28 U.S.C.A. § 2106; Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335.''

Moreover, we are quite strongly impressed with what this Court did in the resolution of a quite similar difficulty in Cuthbert v. United States, 1960, 278 F.2d 220 [citing Vick, supra].

See, also, Rodriguez v. United States, 1956, 232 F.2d 819, in which we said:

"The authorities are clear that circumstantial evidence may, of course, * * * convict. Nevertheless, because of the fact that it is circumstantial and that a grave wrong may be done to an innocent man by reasoning from circumstances not sufficiently cogent in themselves or as connected, and particularly not sufficiently exclusive of every innocent hypothesis, the courts have been very sedulous to prevent an innocent man being found guilty where the evidence does not conform to the acceptable standards."

See, also, Fowler v. United States, 5 Cir., 1956, 234 F.2d 697.

We are well aware that in United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658, the Supreme Court held that a defendant's unexplained presence at a still may be sufficient to support a conviction for the carrying on of the business. We do not think that Green's presence at the Pearce place is unexplained. He was there to build a house. One might suspect the house construction to have been merely a pretext, a "blind", but there is no testimony to prove it.

We at once concede that the evidence is sufficient to support a strong suspicion that Green knew what was going on in the chicken house and could have been participating in it. We are equally reminded that strong suspicion is not enough. The most incriminating circumstance is that on July 12th the officers smelled mash, leading to the belief that Green must also have smelled it. Yet, this was wooded country any part of which the odor could have emanated from. The still was not located in the woods—it was buried under a chicken house, partially occupied by chickens. The still could not be seen until the planking was taken from over the hole by which one gained access to it. Green never went about it until the afternoon he was arrested and that arrest took place so speedily that he was not seen to commit any act of any kind ordinarily involved in carrying on an illicit distilling operation.

■ Judged by the standards announced in the cases herein cited, and with which we are in full accord, we are convinced that as to Green the evidence in this case was, as a matter of law, insufficient to warrant submission to the jury.

This decision will no doubt come as a disappointment to those who arrested this appellant on the occasion in question. The proof shows that they were personally acquainted with Green, and they knew he had the record of prior liquor violations with which he was later impeached when he attempted to testify in his own behalf. They could have taken the still at any time after July 12th. Obviously they patiently waited for three

days for Green to go to the chicken house. He eventually went and was instantaneously arrested. The trouble is that although Green had a lawful reason for being on the Pearce premises the officers did not wait for any incriminating behaviour. The result is that the case comes to us without any tangible act or deed sufficient to prove a fact instead of merely raising a suspicion. Compare particularly what happened in Cuthbert v. United States, supra.

The Judgment of the District Court as to appellants Gilliland and Pearce will be affirmed

The Judgment as to the appellant Green will be reversed and remanded with directions that the indictment be dismissed.

Affirmed in part, and in part reversed.