**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clarence V. PHILLIPS, Defendant-**
**Appellant.**

**No. 28592**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

June 15, 1970.

Frank S. Twitty, Camilla, Ga., for appellant.

Walker P. Johnson, Jr., U. S. Atty., Macon, Ga., for appellee.

Before JOHN R. BROWN, Chief Judge, MORGAN and INGRAHAM, Circuit Judges.

JOHN R. BROWN, Chief Judge:

▮ In this moonshine case Defendant was found guilty of possessing and controlling "a still and distilling apparatus for the production of spirituous liquors set up without having the same registered as required by law" in violation of 26 U.S.C.A. §§ 5179(a) and 5601(a).[1] His sentence was suspended, and he was placed on probation for two years without supervision. The only issue on this appeal is whether the equipment Defendant had in his possession constituted a still. Or, in legal jargon, was the evidence sufficient to support the conviction? We find the evidence sufficient and affirm.[2]

The evidence in this case showed that Defendant's outbuilding, which was locked with the inside walls lined with hay bales so that no one could see in, contained two still pots situated on concrete blocks so that the pots were elevated above the floor about six to eight inches. On the floor directly below the pots was a tin covering. Also located in the building were burners, a butane gas cylinder, a water pump, a catch barrel, and a cap, all of which are commonly used to make moonshine whiskey. The investigating ATU agent also found some black plastic one-inch hose in the building and a water well about 75 feet away connected by pipe with the outside of the building.

The agent, adequately qualified as an expert, testified that it had been some time (2 or 3 months) since the still had been operated although the blackened tin on the floor indicated that it had been operated in this building. He testified that one of the essential parts of a distillery, a condenser, was not there, that the burners were not under the pots, and that there was nothing connected between any pipes connected with the gas cylinder. Defendant contends that the absence of these three elements put his guilt of the crime of possessing a setup still beyond the pale of reasonable doubt.

Since this is a case solely of statutory construction with no constitutional questions, the best place to start would be with the construction placed on the term "set-up" by the Congress.[3] However, not

---

1. The jury found him not guilty of carrying on the business of a distiller.

2. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, Part I.

3. "Every person having in his possession or custody, or under his control, any still or distilling apparatus set up, shall register such still or apparatus with the Secretary or his delegate immediately on its being set up, by subscribing and filing with the Secretary or his delegate a statement, in writing, setting forth the particular place where such still or distilling apparatus is set up, the kind of still and its capacity, the owner thereof, his place of residence, and the purpose for which said still or distilling apparatus has been

surprisingly, there has been no legislative definition. On the other hand, there is a regulation dealing with this tricky question:

"A still will be regarded as set up and subject to registry when it is in position over a furnace, or connected with a boiler [4] so that heat may be applied, although the condenser may not be in position. These instructions as to stills set up are intended merely as illustrations and are not expected to cover all types of stills or condensers requiring registration under the law."

26 C.F.R. § 196.46.

In the present case the still was up on concrete blocks so that heat could be applied, but the burners were not under it although they were nearby in the same locked building. The still was thus not "in position over a furnace, or connected with a boiler" within the regulation. But the second sentence of the regulation allows for situations other than these two in which a still will be deemed "set up".

The several cases on this question offer some help. The first, Colasurdo v. United States, 9 Cir., 1927, 22 F.2d 934, does not discuss the problem (and therefore probably did not consider it) but affirms

conviction on these facts: A carefully concealed cave housed a brand new, elevated still, vats containing mash, and installed oil burners.[5]

Otto v. United States, 7 Cir., 1928, 29 F.2d 504, was the first case that squarely faced the problem. Affirmance of conviction was easily reached on these facts: The entire apparatus—still, condenser, etc.—was assembled except that the condenser was not connected to the boiler, but the dome of the boiler and the connection pipe were on the floor. Citing *Colasurdo*, the Court defined "set up" as "capable of being used". It held that since the dome and connection pipe had to be removed to fill the boiler with mash, the still was set up "in the same sense as would be a tea or coffee pot with top removed for putting in the intended ingredients."

The next case chronologically is United States v. Forty-Six Bottles Alleged Home Brew Beer, E.D.N.Y., 1930, 39 F.2d 240. There the still was completely assembled, and to be made operable all that was necessary was to place a four-inch plug on top and screw down the stud nuts. The Court held simply that this constituted a set up still.

---

or is intended to be used (except that stills or distilling apparatus not used or intended to be used for the distillation, redistillation, or recovery of distilled spirits are not required to be registered under this section)."
26 U.S.C.A. § 5179.
"Any person who—has in his possession or custody, or under his control, any still or distilling apparatus set up which is not registered, as required by section 5179(a) * * * shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense.
26 U.S.C.A. § 5601(a).
An earlier regulation had denied a still as set up when it is "in such condition that spirits may be produced therewith. Where the still is in position over a furnace, or is connected with a boiler so that heat may be applied the still will be regarded as set up although the worm or worm tank is not in position."
See United States v. Cafero, 2 Cir., 1932, 55 F.2d 219, 220.

4. The Regulations defined "still" as:
   " 'Still shall mean any apparatus capable of being used for separating alcoholic or spirituous, vapors, or spirituous, solutions, or spirits, from spirituous solutions or mixtures * * *.' "
   26 C.F.R. § 196.17.
   "Boiler" clearly means something different and apparently refers to a mechanism to heat the liquid for evaporation and condensation.
   The condenser is also defined by the Regulations:
   " 'Condenser' shall mean any apparatus capable of being used when connected with a still, for condensing or liquefying alcoholic or spirituous vapors * * *.' "
   26 C.F.R. § 196.18.

5. Elsewhere was found liquor and the foundation of a recently removed still. Defendant was apprehended in his automobile with a pressure tank, oil burners, pump, hose, funnels, valves, throttles, burner wrenches, etc.

A case similar to *Otto* in that the reason for partial disassembly was preparation for another run is United States v. Williamson, E.D.Tenn., 1953, 111 F.Supp. 411, aff'd, 6 Cir., 208 F.2d 692. In fact, the Defendant was caught in the act of putting bran and sugar in the "still or boiler". Its facts differ from *Otto* in that all the parts were not present (the cap and condenser were never found).[6] The District Court opinion included a type of definition of "set up":

"If this language [of the statute] contemplated only a still that was fully assembled for operation and at such times as it was so assembled, the operation of the statute would be intermittent.

"A more practical construction, and that which the Court believes to be the right one, is that a still comes within the purview of the act the moment it is once assembled and put in readiness for commencement of the distilling of spirits, and that it does not lose its status thereafter as a set-up still merely because it is dismantled in part in preparation of another run."

111 F.Supp. at 412.

The Court of Appeals agreed that the fact that Appellants were putting ingredients into the boiler makes inescapable the conclusion that the missing parts were available when wanted. All these facts led to affirmance.

Another similar case is Guy v. United States, 4 Cir., 1964, 336 F.2d 595. There the Court held that a still "to some extent disassembled, whether more so than is necessary between each 'run' not being clear from the evidence" was a set up still as a matter of law if all parts necessary to put the still in operation were found at the location. The "fact that certain necessary parts had been temporarily removed and hidden nearby did not convert the apparatus from a still to something else. This was a question of law for the court and the court in effect charged the jury that the temporary removal of these parts (which were found nearby) did not convert the still into something else." [7]

The only Fifth Circuit statement on the subject[8] is in Dupoint v. United States, 5 Cir., 1967, 388 F.2d 39, where we held that the existence of a distillery was proved when "The enforcement officer said that the still was complete, and proceeded to name some, although not all, of its integral components. This was enough. When one says that he saw an automobile, it should not be necessary that he describe each and all of its mechanical parts in order to establish the existence of the vehicle."

388 F.2d at 44.

Not all the cases hold against Defendants. United States v. Cafero, 2 Cir., 1932, 55 F.2d 219, followed Treasury

---

6. *Williamson* stated that it is common moonshine practice to take the condenser and cap of the still to a hiding place in order to protect them when the still is left unguarded at night. The ATU agent, an expert in the field, gave uncontradicted proof in the record that this was the practice.

The Witness:
A. *It is very common to not find a condenser at a distillery; as a matter of fact, most of the times they will take the condenser away and hide it or take it somewhere else because they don't want to lose the condenser when the distillery is destroyed; so, it's common practice to take it away.*
Mr. Johnson:
Q. And when, if ever, is the condenser returned to the distillery?

A. At the time that the distillery is put in operation they will bring it back when they come in to work it.
And it is implicitly recognized by the regulation (see 26 C.F.R. § 196.46, *supra*) in specifically stating that a still sans condenser is still a set up still.

7. We are not confronted with the Fourth Circuit's holding that the issue could be determined as a matter of law and need not have been submitted to the jury, as to which there has been severe criticism in United States v. England, 7 Cir., 1965, 347 F.2d 425, 431.

8. See also Gilliland v. United States, 5 Cir., 1967, 385 F.2d 912.

Reg. 3068 (Sept. 4, 1920) (note 3, *supra*) and held that a brand new still not connected with the boiler "was not set up * * * for it was not connected with the boiler so that heat might be applied, nor was it in position over a furnace." Although it appears that all the component parts of a still were present, the Court emphasized that they were not *and never had been* connected so that no still was set up. Considering the test of the ease with which a still can be made operable, see the regulation, note 3, *supra*, we would not follow this case and we doubt the Second Circuit would now in the light of the standards declared in *Moses, infra.*

In United States v. Moses, 2 Cir., 1953, 205 F.2d 358 the Second Circuit recognized that "a still to be 'set up' does not have to be 'in operation,' see United States v. Forty-Six Bottles of Alleged Home Brew," *supra*, and that "the still must be 'capable of being used' * * * see Otto v. United States," *supra*. In *Moses* the government conceded that the still was not set up when police officers arrived but argued that it had been set up and that this was a crime. The Court apparently proceeded on this assumption and held that it was never set up because it was never "capable of being used" as shown by the fact that it was disassembled to repair leaks and adjust the "column," which was too high to permit erection of the "dephlegmator".[9]

The most recent reversal on this ground, "capable of being used" and the case relied on most heavily by Defendant here, is Liverman v. United States, 4 Cir., 1958, 260 F.2d 284. The still parts found were "a large steel still; an accumulation of mash on the floor; sixty feet of rubber hose; and twelve large barrels, in one of which was spent mash, and in another 160 gallons of live mash ready for distillation. There were a water well and fire bricks which evidently had been used. A gasoline-driven pump was pumping mash from a barrel into an open field.

The still was not then in operation, and the officers discovered no boiler, condenser or coils. No whiskey was on the premises. Dried mash had been tracked through the house, and cakes of yeast were found in the refrigerator.

That a still had been operated was clear enough, but it was equally plain that essential parts of the apparatus had been removed before the officers' arrival, and that at the time of seizure the still was not ready to operate. Agents stated that with the distilling apparatus in the garage and various raw materials found on the premises, whiskey could be produced within two hours. However, this was explained to mean that to do so, it would have been necessary to connect the still to the domestic hot water heater, and to use the rubber hose as connecting pipe, and as a substitute for copper coils of a condenser."

260 F.2d at 285.

*Liverman* rejected the argument that set up means "completely set up and capable of being operated without a single part, however minor, missing or disconnected" and adopted an amended *Otto* definition of "readily capable of being set up in an operating state." The Court then found that these circumstances did not exist because without a boiler, condenser or coils more than minor adjustments would be needed to apply heat to the mash and produce whiskey.

Now, armed with several definitions of "set up", we come to the case at hand. Under all the definitions and the cases, and in light of the proved fact that condensers are often removed from the premises for tactical reasons, the absence of the condenser certainly does not make an otherwise set up still not set up. See both the present regulation, *supra*, at note 3, and the 1920 regulation, *supra*, 3; Williamson v. United States, *supra*. Nor do we feel that the facts that the burners were not under the still and that they were not connected with

---

9. Judge Learned Hand, dissenting, thought the judgment should have been affirmed on the ground that Defendant was guilty of an attempt to commit the offense charged. (See F.R.Crim.P. 31(c)). 205 F.2d at 359.

**1080**

the cylinder can deprive an otherwise set up still of its character. This record factually demonstrated that tasks of connecting the burners and sliding them under the still are readily accomplished. *Liverman* does not compel a different result.

Affirmed.