437 F.2d 1188
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Lee PIERCEFIELD, Defendant-Appellant.
No. 30201 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc
v.
Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.
 United States Court of Appeals, Fifth Circuit.
 Jan. 28, 1971, Rehearing Denied March 10, 1971.
 
 Jack J. Taffer, Miami, Fla., for defendant-appellant.
 Robert W. Rust, U.S. Atty., Richard A. Hauser, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.
 Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 The defendant, Thomas Lee Piercefield, was tried by the court on charges of receiving and concealing approximately 1,751 grams of unlawfully imported hashish, knowing the hashish to have been unlawfully imported, in violation of 21 U.S.C. 176a. The court found him guilty and sentenced him to serve six years in the custody of the Attorney General.
 
 
 2
 On appeal Piercefield presents two contentions: (1) that the Government's evidence was insufficient to prove that the hashish in question had in fact been unlawfully imported, and (2) that the evidence was insufficient to prove that Piercefield knew that the hashish had been unlawfully imported. We find that the Government's evidence was sufficient to support Piercefield's conviction and affirm the judgment of the district court.
 
 I.
 
 3
 As a predicate for his argument, Piercefield contends that the Supreme Court's decision in Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, holding unconstitutional the presumption in 176a of knowledge of importation from the mere fact of possession of marihuana, should be applied to hashish. Hashish is of course a refined form of marihuana, and Piercefield argues that with respect to the irrationality of the presumption of knowledge of importation from the sole fact of possession, there can be no distinction between hashish and marihuana. See United States v. Maestri, 9 Cir. 1970, 424 F.2d 1066. It is Piercefield's position that there was no direct evidence of the unlawful importation of the hashish in question or of his knowledge of its importation; therefore, he concludes, in order to convict him, the trial court must have relied on the presumption in 176a. Since that presumption with respect to hashish is patently unconstitutional under the Leary case, Piercefield argues, his conviction must be reversed. In the alternative, Piercefield contends that if the Court should find some direct evidence of importation or his knowledge of importation, we should nevertheless remand the case to the trial court for a specific finding whether the trial judge also took into account the 176a presumption. See United States v. Cepelis, 9 Cir. 1970, 426 F.2d 134.
 
 
 4
 We find it unnecessary either to remand the case or to rule upon Piercefield's constitutional argument. From the record it appears clear that the trial court did not utilize the 176a presumption in finding Piercefield guilty as charged. At the conclusion of the hearing on the motion for a new trial based on the argument as to the invalidity of the presumption, the trial judge remarked,
 
 
 5
 I think the marking on one of the packages of hashish and the circumstances surrounding the apprehension of the defendant showed knowledge on his part, and I will deny the motion.
 
 
 6
 Since the trial court did not invoke the presumption in this case, Piercefield's Leary argument is here inapposite. See McClain v. United States, 9 Cir. 1969, 417 F.2d 489, 491-492; cf. United States v. Williams, 5 Cir. 1970, 435 F.2d 1001. We therefore proceed to his contentions concerning the sufficiency of the evidence.
 
 II.
 
 7
 Piercefield contends that the Government's evidence is insufficient to prove that the hashish had in fact been unlawfully imported and that he had knowledge of that fact. Since importation and knowledge of importation are essential elements of the crime charged, Piercefield argues, his conviction must be reversed.
 
 
 8
 In passing on sufficiency of the evidence questions, we of course apply the familiar rule that the evidence must be considered in the light most favorable to the Government and if there is substantial evidence to support the verdict, we must affirm the conviction. Glasser v. United States, 1944, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704; Gilliland v. United States, 5 Cir. 1967, 385 F.2d 912; Gorman v. United States, 5 Cir. 1963, 323 F.2d 51, 52.
 
 
 9
 We hold that in this case substantial evidence exists to support a finding of unlawful importation. Sydney L. Waldour, a chemist for the United States Customs Laboratory, testified that although it was theoretically possible to do so, to his knowledge hashish has never been manufactured in the United States: 'Any marihuana grown in the confines of the United States has a resin content so low as not to be attractive to the persons using it'; it would be necessary to have 625 pounds of marihuana with the highest resin quality to make one pound of hashish.[1] Special Agent John F. Flynn testified that customs agents seized Claude Trudeau at Kennedy International Airport in New York City and found on him ten bricks of hashish. This was the same hashish that Trudeau ultimately delivered to Piercefield in Miami and that formed the basis of the instant prosecution. Flynn testified that Trudeau came across the Canadian border by automobile, parked the car at the Plattsburgh, New York, airport, and took a Mohawk Airlines flight to Kennedy International Airport, where customs agents discovered the hashish. In addition, the Government introduced into evidence the bricks of hashish transported by Trudeau, delivered to Piercefield, and finally seized from him by customs agents in Miami. The bricks themselves bore markings-- apparently in Arabic or Turkish-- indicating their foreign origin.
 
 III.
 
 10
 Similarly, we hold that there exists substantial evidence to support a finding that Piercefield knew that the hashish had been unlawfully imported.
 
 
 11
 The Supreme Court in Leary could 'imagine' five ways in which a possessor of marihuana might acquire such knowledge:
 
 
 12
 (1) he might be aware of the proportion of domestically consumed marihuana which is smuggled from abroad and deduce that his was illegally imported; (2) he might have smuggled the marihuana himself; (3) he might have learned by indirect means that the marihuana consumed in his locality or furnished by his supplier was smuggled from abroad; (4) he might have specified foreign marihuana when making his 'buy,' or might have been told the source of the marihuana by his supplier; (5) he might be able to tell the source from the appearance, packaging, or taste of the marihuana itself.
 
 
 13
 395 U.S. at 47, 89 S.Ct. 1532 at 1554, 23 L.Ed.2d at 88.
 
 
 14
 The trial court concluded that the markings on the bricks of hashish and the circumstances surrounding Piercefield's arrest showed knowledge on his part. We agree. The appearance and packaging of the marihuana are indicia by which the Court in Leary held that knowledge of importation could be proved. Moreover, the Government introduced into evidence a tape-recorded telephone conversation between Trudeau, the supplier, and Piercefield. That conversation strongly implies that Piercefield knew of Trudeau's activities and that in accordance with a prior arrangement expected to receive from him a shipment of hashish-- 'the best around.' Michael A. Romano, United States Customs Agent, stationed at Miami, testified that Trudeau delivered one brick sample of hashish to the defendant's residence and was paid $200. Defense counsel stipulated that the hashish was in fact delivered to appellant's home that afternoon in question, as previously brought out during the hearing of the Motion to Suppress, and that the defendant had possession of the bricks. On all of this evidence, the trial court could reasonably infer that Piercefield knew that the hashish furnished him by his supplier was smuggled from abroad.
 
 
 15
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Concerning the relationship between marihuana and hashish, Sydney L. Waldour, chemist at the United States Customs Laboratory, testified as follows:
 Ordinary marihuana is the flowering top of the Indian hemp plant, of the female Indian hemp plant, which contains the active resin known as tetrahydrocarbinol. The hashish is a concentrated form of this commonly known as the resin portion and it is much more active than the regular marihuana. * * * Several methods of manufacture are possible. One method of manufacture would be to pick the flowering tops from the Indian hemp plant and roll them on leather blankets so as to squeeze the resin out. This could be scraped off of the leather blanket with a dull knife and compressed into cakes, which is a common form that hashish enters the country * * * according to the research done by one of our chemists in our New Orleans laboratory, it takes about 625 pounds of marihuana to manufacture one pound of hashish. * * * It would have to be very good marihuana, very high resin content * * * any marihuana grown within the confines of the United States has a resin content so low as to not be attractive to the persons using it. * * * To our knowledge hashish has never been manufactured in the United States.